UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

VAL SMITH AND GWEN SMITH                                                              Plaintiff

v.                                                                    Civil Action No. 4:24-cv-00079-RGJ

AMERICAN STRATEGIC INSURANCE                                                       Defendant
CORP AND
PROGRESSIVE CASUALTY INSURANCE
COMPANY

\* \* \* \* \*

**MEMORANDUM OPINION & ORDER**

Defendants American Strategic Insurance Corp ("American") and Progressive Casualty Insurance Company ("Progressive") (collectively, "Defendants"), move to dismiss under Fed. R. Civ. P. 12(b)(6). [DE 9]. Plaintiffs Val Smith and Gwen Smith (the "Smiths") responded [DE 12] and the Defendants replied [DE 13]. The parties have since stipulated and agreed that Progressive is not an appropriate party to these claims and agree to dismiss Progressive without prejudice. [DE 19]. These matters are ripe. For the reasons below, all claims against Progressive are **DISMISSED without prejudice**. Further, the Motion to Dismiss [DE 9] is **DENIED in part** as to Count II, Count III, and Count V, and **GRANTED in part** as to Count IV.

**I.        BACKGROUND**

Both Defendants named in the complaint are insurance companies. Progressive is an insurance company principally based in Ohio and licensed to issue insurance policies in the state of Kentucky. [DE 6 at 75]. American is an insurance company based in Florida and licensed to issue insurance policies in Kentucky. [*Id*]. The Smiths purchased a homeowners insurance policy from American for their property at 496 Southwood Drive in Madisonville, Kentucky 42431 (the "Property"). [*Id*. at 76]. The policy initially ran from July 15, 2019, to July 1, 2021, but was

1

extended through the 2024 calendar year. [*Id*.]. The coverage is under American policy number KYA36065 and included protections for damages to property and structures resulting from coal mine subsidence. [*Id*].

On or about April 15, 2021, the Smiths made a claim under policy KYA36065 for coal mine subsidence damage to the Property. [*Id*]. American hired NV5, a technical engineering consulting firm, to investigate the Smiths' reported damages to determine whether the damages were caused by coal mine subsidence. [DE 9 at 145]. NV5 finished their investigation on or about June 30, 2021, and issued an initial report to American which stated that "the damaged [sic] documented on the property was not caused by mine subsidence." [*Id*. at 146]. American denied the Smiths' claim by letter on July 5, 2021. [*Id*.]. Since the denial of their claim the Smiths have continued to see "progressive damage on their property." [DE 6 at 76].

In January 2024, after speaking with the Kentucky Division of Abandoned Mine Lands ("AML") the Smiths asked American to re-open their claim. [*Id*]. On or about January 25, 2024, American re-opened the Smiths' claim and performed a second investigation, hiring NV5 and other agents. [*Id*. at 77]. On January 18, 2024, an independent adjuster with NV5 re-inspected the Property and told the Smiths the Property had "the worst coal mine subsidence" he had ever seen. [*Id*.]. NV5 reviewed several drill logs and maps of mining activities and borings on the Smiths' Property. [*Id*.]. American and its agents had access to information from the Kentucky Division of Engineering and Contract Administration including a state request for bids for the "Gwen Smith Subsidence Project." [*Id*.]. The project sought to grout under the Property to fix mining subsidence and prevent future damage. [*Id*.]. The bid stated that the

> Gwen Smith residence has been damaged by mining subsidence and/or mining influenced slope instability. The work will consist of exploratory drilling and logging the borehole core to verify the #11 seam coal mine location of rooms and

> pillars and to verify which pillars have collapsed and to determine the extents of the surface expression of the mine subsidence.

[DE 6-2 at 126]. On October 26, 2023, Pollard and Sons Excavating L.L.C. submitted the winning bid for the Gwen Smith Subsidence Project, and the total cost of the grouting exceeded $1.8 million. [DE 6 at 79]. With this information available American again denied the Smiths' claim "due to the exclusions for wear and tear, deterioration, earth movement, settling cracking of foundations, floors, walls or ceilings and existing damages." [*Id*.].

The Smiths brought five claims against American and Progressive based on American's denial of coverage. The parties have since stipulated and agreed that Progressive is not an appropriate party to these claims and that the liable party, if any, is American. [DE 19 at 259]. The parties have agreed to dismiss Progressive without prejudice. [*Id*]. Against American, the Smiths allege Breach of Contract (Count I), Violations of the Kentucky Unfair Claims Settlement Practices Act (Ky. Rev. Stat. § 304.12-230) (Count II), Common Law Bad Faith (Count III), Negligence (Count IV), and Violations of Ky. Rev. Stat. § 304.12-235 (Count V). [DE 6]. American now moves to dismiss Counts II through V. [DE 9].

## II. STANDARD

Federal Rule of Civil Procedure 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable

3

for the misconduct alleged." *Id.* (citing *Twombly,* 550 U.S. at 556). This standard does not "impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.*

Because a motion to dismiss challenges the sufficiency of the pleadings, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence." *Miller v. Currie*, 50 F.3d 373, 377 (6th Cir. 1995). Rather, to determine whether the plaintiff set forth a "plausible" claim, the Court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994). However, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation"; "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). In deciding a motion to dismiss, the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted).

When reviewing a Rule 12(b)(6) motion to dismiss, the trial court "must construe the complaint liberally in the plaintiff's favor and accept as true all factual allegations and permissible inferences therein." *Gazette*, 41 F.3d at 1064 (citing *Westlake v. Lucas,* 537 F.2d 857, 858 (6th Cir. 1976)); *see also Miller*, 50 F.3d at 377. Because a motion to dismiss rests on the pleadings rather than the evidence, "[i]t is not the function of the court [in ruling on such a motion] to weigh evidence or evaluate the credibility of witnesses." *Miller,* 50 F.3d at 377 (citing *Cameron v. Seitz,* 38 F.3d 264, 270 (6th Cir. 1994)). However, while this standard is liberal, it requires more than

4

the bare assertion of legal conclusions. *In re DeLorean Motor Co.,* 991 F.2d 1236, 1240 (6th Cir. 1993) (citing *Scheid v. Fanny Farmer Candy Shops, Inc.,* 859 F.2d 434, 436 (6th Cir. 1988)). Rather, the complaint must contain either direct or inferential allegations with regard to all the material elements to sustain recovery under some viable legal theory. *In re DeLorean Motor Co.*, 991 F.2d at 1240 (citations omitted).

### III.   ANALYSIS

The parties agree that Progressive is not an appropriate party to these claims. [DE 19 at 259]. As such both parties have stipulated and agreed to dismiss Progressive without prejudice. [*Id*]. The Court agrees and will dismiss all claims against Progressive without prejudice and remove Progressive from this case. Although the Motion to Dismiss [DE 9] is a joint motion made by both Progressive and American, the Court will consider the motion as though it were made solely by American given the parties agreement that Progressive is not a proper party.

**1. Bad Faith Claims: Count II, III, and V**

Count II, Count III, and Count V are based on claims of common law bad faith and Kentucky's Unfair Claims Settlement Practices Act (KUCSPA). [DE 12 at 221]. All three counts allege that American carried out the obligations of the Smiths' insurance policy in bad faith when it denied their claim for mine subsidence damage. American argues that all three claims should be dismissed as a matter of law because American relied on the opinions of its experts in good faith and declined the Smiths' claim for good cause. [DE 9 at 149].

In Kentucky, to prevail on a claim for bad faith in an insurance contract a plaintiff must show:

> (1) that the insurer was obligated to pay the claim under the terms of the policy; (2) that the insurer lacked a reasonable basis in law or fact for denying the claim; and (3) that the insurer knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed.

*Scott v. Deerbrook Ins.,* 714 F. Supp. 2d 670, 676 (E.D. Ky. 2010) (citing *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky. 1993)). Additionally, "before a cause of action for violation of the KUCSPA exists, there must be evidence sufficient to warrant punitive damages." *Motorists Mut. Ins. Co. v. Glass*, 996 S.W.2d 437, 448 (Ky. 1997) (citing *Wittmer*, 864 S.W.2d at 890). "The appropriate inquiry is whether there is sufficient evidence from which reasonable jurors could conclude that in the investigation, evaluation, and processing of the claim, the insurer acted unreasonably and either knew or was conscious of the fact that its conduct was unreasonable." *Farmland Mut. Ins. v. Johnson*, 36 S.W.3d 368, 376 (Ky. 2000), *as modified* (Feb. 22, 2001) (internal quotation marks omitted); *Phelps v. State Farm Mut. Auto. Ins.*, 736 F.3d 697, 704 (6th Cir. 2012).

State and federal courts alike emphasize the "high *evidentiary* threshold in bad faith actions against insurers," *Nat'l Sur. Corp. v. Hartford Cas. Ins.*, 502 F. App'x 425, 428 (6th Cir. 2012) (emphasis added). The standard for determining bad faith requires courts to evaluate available evidence throughout the *Wittmer* analysis, 864 S.W.2d at 890, evidence which generally does not become available until discovery. For that reason, courts ordinarily address such cases at the summary judgement stage given their fact intensive nature. *Hatton v. Nationwide Mut. Ins.*, 2019 WL 13211834, at *1 (E.D. Ky. Aug. 15, 2019) (rejecting a defendant's argument of futility as to bad faith insurance claims because "at this early stage in the litigation, the [plaintiffs] are entitled to discovery on their bad faith claim."), *Evans Chiropractic, P.S.C. v. Thauberger,* No. 2009-CA-002287-MR, 2012 WL 751968, at *7 (Ky. Ct. App. Mar. 9, 2012) ("The question of whether a party acted in good or bad faith is inherently a factual one."). In support of its motion American largely relies on cases at or appealing trial or summary judgment. Further, as this is a motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the Smiths' complaint. *See Saalim v. Walmart, Inc.*, 97 F.4th 995, 1001 (6th Cir. 2024).

*A. Step One: Obligation to Pay*

The first step in analyzing a bad faith insurance claim is determining whether there was an obligation to pay. *Wittmer*, 864 S.W.2d at 890. An obligation to pay arises from a final judgment or settlement, or from an express contractual relationship. *Kim v. Ampler Burgers Ohio, L.L.C.*, 2023 WL 4569577, at *2 (E.D. Ky. June 30, 2023), *report and recommendation adopted,* 2023 WL 4565962 (E.D. Ky. July 17, 2023) (citing *United States Liab. Ins. Co. v. Watson*, 626 S.W.3d 569, 575 (Ky. 2021) and *Davidson v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000)). An obligation to pay "requires proof that the insured's policy requires the insurer to pay, not that there is liability under the contract, which is analyzed under *Wittmer's* second requirement." *Mosley v. Arch Specialty Ins*, 626 S.W.3d 579, 585 (Ky. 2021) (quoting *Hollaway v. Direct Gen. Ins. Co. of Mississippi, Inc.,* 497 S.W.3d 733, 738 (Ky. 2016)).

American argues that the Smiths fail to properly allege an obligation to pay under the first prong of the *Wittmer* test as they do not make any factual allegations that the damage to the Property was caused by a "mine collapse." [DE 9 at 154]. But this argument lacks merit. American's emphasis on a failure to specifically allege a "mine collapse" fails as the terms "mine subsidence" and "mine collapse" are functionally interchangeable in the context of this dispute. The mine subsidence endorsement that governs this agreement, and is referenced by American, defines mine subsidence as "the collapse of underground coal mines resulting in direct damage to a 'structure.'" [DE 9-1 at 195]. American's argument is based on an unsupported contention that mine subsidence and a mine collapse are distinct concepts, despite the governing agreement at issue showing that mine subsidence occurs due to mine collapse. [*Id*.]. Any allegation of mine subsidence is inherently an allegation that the Property was damaged structurally by a mine collapse.

The Smiths claim that the Property was insured against mine subsidence damage by American under policy number KYA36065. [DE 6 at 3]. The Smiths further allege repeatedly that the Property experienced mine subsidence damage covered by their policy. [*Id*. at 1, 3-6]. According to the Smiths, an independent adjuster hired by NV5 informed the Smiths of serious mine subsidence, and that the Commonwealth of Kentucky had authorized a $1.8 million grouting project due to coal mine subsidence on the Smiths' Property. [*Id*. at 4-7]. The Smiths have alleged that they possess an insurance policy with American that obligated payment for mine subsidence on the Property. As a result, the first step of the *Wittmer* test is satisfied.

### B. Step Two: Reasonable Basis for Denial of Claim

The second step of the *Wittmer* test requires the plaintiff show that the insurer lacked a reasonable basis in law or fact for denying the claim. *Wittmer*, 864 S.W.2d at 890. To satisfy this element, a plaintiff must show that the insured's liability is beyond dispute. *Mosley*, 626 S.W.3d at 586. The Smiths argue that the evidence provided in the complaint shows that American had no reasonable basis to deny the Smiths' claim. American contends that the investigation American conducted, which the Smiths acknowledge in their complaint, provides a reasonable basis for denial of the claim, thus warranting dismissal of any bad faith claim. [DE 9 at 152].

The arguments raised by American are largely fact based. They require the Court to determine whether there is evidence of a reasonable basis for denial of the Smiths' insurance claim before the Court has been presented with evidence of their justification. Generally, fact-based arguments such as this "which require the Court to analyze the record in order to test the sufficiency of claims, are best suited for consideration at the summary judgment stage," not in a motion to dismiss. *Phoenix v. Gonterman*, 2024 WL 3826126, at *4 (E.D. Ky. Aug. 13, 2024) (citing *Riley v. Wells Fargo Bank, N.A.,* 2017 WL 2240570, at *8 (E.D. Ky. May 22, 2017)). At

this stage of the proceedings, the Court accepts all allegations pled by the Smiths as true. *Saalim*, 97 F.4th at 1001. Although the Smiths acknowledge that American investigated the mine subsidence claim before denial, the Smiths contend this investigation did not provide a reasonable basis for denial. According to an independent adjuster from NV5, American's own hired investigator, the Property had the worst mine subsidence damage he had ever seen. [DE 12 at 218; DE 6 at 77]. American also had access to numerous diagrams and documents that showed drilling and boring on the property, as well as information related to the state run "Gwen Smith Subsidence Project" which took bids to grout under the Property to repair and prevent future mine subsidence. [DE 6 at 79]. The Smiths have adequately alleged that American had knowledge of mine subsidence to the Smiths' Property from both official state records, as well as their own investigators. This is sufficient to find that American had no reasonable basis to deny the Smiths' claim at this stage of the proceedings.

American relies on *Belt v. Cincinnati Ins.*, to support the premise that its reliance on outside counsel was sufficient to create a reasonable basis to deny the Smiths' claim. 664 S.W.3d 524, 534 (Ky. 2022), *reh'g denied* (Mar. 23, 2023). But *Belt* is distinguishable from the facts presented here. First, the holding in *Belt* was rendered after trial where both parties had the opportunity to present evidence. *Belt*, 664 S.W.3d at 534. The court in *Belt* relied heavily on evidence submitted for trial that detailed the defendant's reasons for denying the plaintiff's claim, not the mere fact that the defendant held an investigation or consulted outside counsel. *Id*. ("In the face of the factual evidence admitted at trial, we do not believe that a reasonable juror could conclude that CIC lacked a basis in law or fact for challenging the policy's coverage of Belt's claim"). Here, the Court does not have the benefit of evidence from experts or discovery that would be produced at trial and is left with just the determination of NV5, which the Smiths directly counter in their complaint, and

a brief report detailing what they reviewed in making that determination. [DE 6-1]. Given the stage of these proceedings, this Court lacks the necessary evidence presented in *Belt* supporting a reasonable basis for denial given the factual allegations raised by the Smiths in the complaint.

Second, in *Belt* the court determined that the defendant's reliance on outside counsel to deny coverage was reasonable as they informed the defendant of potentially novel legal issues and factual questions that raised questions of whether the plaintiff was covered by the policy. *Id*. at 535. Here, the outcome of the investigation is much less clear. Even though NV5 determined that mine subsidence was not the cause of the damages to the Property [*id*.], the Smiths allege that NV5's own adjustor told them that the Property had "the worst coal mine subsidence" he had ever seen. [DE 6 at 77]. The Court lacks additional evidence of what American relied on in making its determination beyond the NV5 report and the Smiths' allegations. Given this information, the Court cannot find that this investigation provided a reasonable basis for the denial of the Smiths' subsidence claims sufficient to defeat the bad faith claims at this early phase of the proceedings. The Smiths have sufficiently alleged that American lacked a reasonable basis to deny their claim.

### C.  Step Three: Knowledge of Lack of Reasonable Basis

The third and final step in the *Wittmer* bad faith analysis is whether the insurer knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed. *Wittmer*, 864 S.W.2d at 890. Despite the Kentucky Supreme Court's ruling in *Farmland Mut. Ins.* that held "the appropriate inquiry is whether . . . the insurer acted unreasonably," many Kentucky courts still recognize *Wittmer's* punitive-damages standard. *Phelps,* 736 F.3d at 705 (citing *Farmland Mut. Ins.*, 36 S.W.3d at 375). If an insurer's actions are so outrageous as to warrant punitive damages, then it satisfies both the tests relied on by Kentucky courts. To satisfy this standard the "[e]vidence must demonstrate that an insurer has engaged in

outrageous conduct toward its insured. Furthermore, the conduct must be driven by evil motives or by an indifference to its insureds' rights." *United Servs. Auto. Ass'n v. Bult*, 183 S.W.3d 181 (Ky. App. 2003).

The Smiths allege that American knew there was no reasonable basis for denying their claim based on access American had to drilling maps, the state of Kentucky's grouting proposal, and American's own expert from NV5 that all confirm mine subsidence. [DE 12 at 220]. According to the Smiths, American deliberately "re-categorize[d] mine subsidence into an exclusion that the policy would not cover." [*Id*.]. Accepting all of these allegations as true, the Smiths have properly pled that American knew the Smiths' property damage was covered by the policy and intentionally denied a claim they knew was valid to avoid paying the Smiths. This is an intentional and willful disregard of an insured's rights which bad faith claims are specifically aimed at stopping. *Zurich Ins. Co. v. Mitchell*, 712 S.W.2d 340, 343 (Ky. 1986). This alleged knowledge of their lack of reasonable basis satisfies the third step of the *Wittmer* test. *Wittmer*, 864 S.W.2d at 890.

### D. Additional Factual Arguments

American makes two additional fact-based arguments for the dismissal of the Smiths' bad faith claims without citation to caselaw. First, American argues that it had nothing to gain financially from denying the Smiths' claims because it would have been entitled to reinsurance from the Kentucky Mine Subsidence Insurance Fund ("KMSIF"), which reinsures insured companies for mine subsidence losses. Ky. Rev. Stat. § 304.44-030. This argument fails for two reasons. First, American acknowledges that the KMSIF would only provide reinsurance "in an amount not to exceed $300,000." [DE 13 at 236]. The damages suffered by the Smiths have not been specifically determined at this stage of the proceedings. However, given the $1.8 million

11

dollars already spent to repair the Property, and the damages alleged by the Smiths, it is plausible the claim would have exceeded the $300,000 American would be reinsured for. [DE 6 at 79]. Second, as this Court has repeatedly expressed, at this stage of the litigation courts are required to accept as true all well pled facts in the complaint and cannot consider any facts or documents not referenced or used in the pleadings. *Lopes v. Louisville-Jefferson Cnty. Metro Gov't*, No. 3:23-CV-503-DJH, 2024 WL 4218016, at *3 (W.D. Ky. Sept. 17, 2024) (citing *Bates v. Green Farms Condo. Ass'n,* 958 F.3d 470, 483 (6th Cir. 2020)). American's claim that it was reinsured was not included in any pleadings and was not presented as evidence that would convert this motion into one for summary judgment. As such, the Court cannot consider these factual allegations when ruling on its motion to dismiss. The Smiths properly allege that American benefited financially from the denial of the Smiths' claim.

Second, American alleges that if the Smiths' claim that the damage to the Property was "continuing to present day and becoming dangerous for the Smiths" [DE 12 at 2] after the Commonwealth of Kentucky took corrective action to repair mine subsidence on the property, then "the logical conclusion is that the damages were not caused by mine subsidence in the first place." [DE 13 at 235]. This argument also fails. There are numerous other equally or more plausible explanations for why the Property would continue to deteriorate after the Commonwealth of Kentucky paid to repair what it believed the be mine subsidence. Most obvious among them is that the repairs simply did not work. American again asks this Court to make a factual determination without facts in the record to base a decision on, this time asking the Court to determine that no mine subsidence had occurred, a central issue in this trial. American can contest these claims in a motion for summary judgment or at trial where their arguments are more properly raised.

At this stage, the Smiths have sufficiently pled a claim of bad faith to avoid dismissal. After

discovery, American will be able to contest the facts to show that it possessed a reasonable basis to deny the Smiths' claim, or that it did not knowingly or recklessly deny the claim without a reasonable basis. It may be the case that at that point American is able to present evidence to defeat the claim of bad faith, but such evidence has not yet been presented to the Court. Accepting all the Plaintiff's factual allegations as true, the Smiths have met every element of the *Wittmer* test and have sufficiently pled a viable bad faith claim under Kentucky law.

### 2. Count IV: Negligence

American argues that Count IV of the complaint, negligence, must be dismissed pursuant to the economic loss doctrine. According to American, the duties the Smiths assert American breached are "merely a recharacterization of the express or implied obligations under the Policy" and must be dismissed as they are not independent of the obligations in the insurance policy. [DE 9 at 154-155]. The Smiths argue that even if the economic loss rule would bar their negligence claim, dismissal is not warranted as the economic loss doctrine does not apply in Kentucky. [DE 12 at 224].

The economic loss doctrine is a rule designed to prevent "the law of contract and the law of tort from dissolving one into the other." *Nami Res. Co., L.L.C. v. Asher Land & Min., Ltd.*, 554 S.W.3d 323, 335 (Ky. 2018) (citing *Oracle USA, Inc. v. XL Glob. Servs., Inc.*, No. C 09-00537 MHP, 2009 WL 2084154, at *4 (N.D. Cal. July 13, 2009)). To that end, the economic loss doctrine "prohibits the recovery of tort damages in a breach of contract case." *Id*. A plaintiff can only recover contract based economic damages stemming from a breach of contract if "he can demonstrate harm above and beyond a broken contractual promise." *New London Tobacco Mkt., Inc. v. Kentucky Fuel Corp.*, 44 F.4th 393, 414 (6th Cir. 2022) (citing *Nami Res. Co., L.L.C.*, 554 S.W.3d at 335). Because the economic loss doctrine prohibits tort claims identical to the

13

underlying breach of contract claim as a matter if law, courts routinely dispose of such claims at the motion to dismiss stage. *Jones v. Lubrizol Advanced Materials, Inc.*, 559 F. Supp. 3d 569 (N.D. Ohio 2021), *on reconsideration in part*, No. 1:20-CV-00511, 2021 WL 4582180 (N.D. Ohio Oct. 6, 2021).

The Smiths assert that the Kentucky Supreme Court has never expressly adopted the economic loss doctrine, and appellate courts have only implicitly adopted it for limited purposes such as product liability disputes. *Davis v. Siemens Med. Sols. USA, Inc.*, 399 F. Supp. 2d 785, 801 (W.D. Ky. 2005), *aff'd,* 279 F. App'x 378 (6th Cir. 2008). However, the Smiths rely on outdated law when arguing against the application of the economic loss doctrine in Kentucky. In recent years the Supreme Court of Kentucky has explicitly applied and expanded the economic loss doctrine. In 2017, the Kentucky Supreme Court extensively analyzed the economic loss doctrine and the intersection of contract and tort law when rejecting a claim for "negligent performance of contract" in *Superior Steel, Inc. v. Ascent at Roebling's Bridge, L.L.C.* 540 S.W.3d 770 (Ky. 2017). Although *Superior Steel* did not explicitly adopt the economic loss doctrine, its application of the doctrine was explicitly affirmed and adopted in *Nami Res. Co.,* where the Supreme Court of Kentucky rejected a claim for punitive damages for fraudulent breach of contract by invoking the economic loss doctrine, holding explicitly that it applied to contract disputes in Kentucky. 554 S.W.3d at 336. The Sixth Circuit itself has recognized the use of the doctrine in Kentucky as recently as 2022 in *New London Tobacco Market, Inc.*, 44 F.4th at 414. The economic loss doctrine applies in Kentucky as supported by recent caselaw at the state and federal level.

The negligence claim under Count IV of the complaint alleges that American owed a duty to the Smiths including, but not limited to, "conducting a reasonable investigation, accurately estimating repair costs in both the claim process and the underwriting process, and promptly

paying money owed under the Policy consistent with the duties of insurance an insurance company to its policyholder." [DE 6 at 81]. The duties that the Smiths allege American breached are all contractual obligations from the insurance policy the Smiths purchased from American. The damages suffered from this alleged breach are the same damages that the Smiths would recover from their breach of contract claim under Count V. The Smiths acknowledge this in their response when they argue that American had a duty to "promptly pay money owed under the policy which they breached." [DE 12 at 225]. The Smiths' negligence claim in Count IV is barred by the economic loss doctrine.

## IV. CONCLUSION

For these reasons, the Court, having considered the applicable law and being otherwise sufficiently advised, **IT IS ORDERED** as follows:

1. All claims against Progressive Casualty Insurance Company are **DISMISSED without prejudice**, and Progressive is removed from this case,

2. The Motion to Dismiss [DE 9] is **DENIED in part** as to Count II, Violations of the Kentucky Unfair Claims Settlement Practices Act, Count III, Common Law Bad Faith, and Count V, Violations of Ky. Rev. § Stat. 304.12-235.,

3. The Motion to Dismiss [DE 9] is **GRANTED in part** as to Count IV, Negligence.

Rebecca Grady Jennings, District Judge
United States District Court

July 23, 2025